UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Gavin G., | Case No. 24-cv-947 (ECT/DTS) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| Martin O'Malley,<br>*Commissioner of Social Security,* | |
| Defendant. | |

## INTRODUCTION

Claimant Gavin G. seeks judicial review of the denial of his application for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. Dkt. No. 8. His claim was denied initially and on reconsideration. Administrative Record (Admin. Rec.) at 109-26; Dkt. No. 7. He requested and received review by an Administrative Law Judge (ALJ), who determined he was not eligible for benefits. *Id.* at 27-39. The Appeals Council denied Claimant's request for review. *Id*. at 13-18. This action followed.

Claimant makes two arguments in support of his appeal. He argues that despite finding the opinions of state agency psychological consultants persuasive, the ALJ failed to include limitations they recommended for (1) interacting with supervisors, and (2) absenteeism and time off task, when determining his residual functional capacity (RFC). Dkt. No. 8 at 9-18. For the reasons explained below, the Court recommends the Commissioner's decision be affirmed.

## BACKGROUND

**I.      Procedural History**

On October 20, 2021, Claimant applied for SSI benefits, alleging disability beginning on April 1, 2021 due to bipolar disorder, schizophrenia, post-traumatic stress disorder, pancreatitis, diabetes, and anxiety. Admin. Rec. at 222; Dkt. No. 7. The ALJ held a hearing on December 16, 2022 and issued a decision on February 27, 2023 finding Claimant not disabled. *Id.* at 27-39, 46-84.

The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is entitled to SSI benefits. 20 C.F.R. § 404.1520(a). The Commissioner evaluates "(1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is, or approximates, a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *Brock v. Astrue*, 674 F.3d 1062, 1064 n.1 (8th Cir. 2012); *see also* 20 C.F.R. § 404.1520(a)(4).

At Step 1, the ALJ determined that Claimant has not engaged in substantial gainful activity since October 20, 2021. Admin. Rec. at 30; Dkt. No. 7. At Step 2, the ALJ found that Claimant has several severe impairments, including hypertension; pancreatitis; alcohol withdrawal syndrome; and schizoaffective disorder, bipolar type. *Id.* At Step 3, the ALJ found that none of these impairments, alone or combined, meets the severity of the impairments listed in 20 C.F.R. § 404. *Id.* at 31. At Step 4, the ALJ found that Claimant has the following RFC:

> [T]o perform light work as defined in 20 CFR 416.967(b) except the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk 6 hours in an 8-hour workday and sit about 6 hours. He can occasionally

>    stoop, kneel, crouch, and crawl. The claimant can understand, remember, and carry out simple, routine tasks. He can tolerate brief and superficial interactions with coworkers and general public. He can tolerate the stressors and pressures of a routine, predictable work setting.

*Id.* at 33. The ALJ determined that Claimant had no past relevant work. *Id.* at 37. At Step 5, the ALJ concluded that Claimant could perform work that existed in the national economy and identified three occupations suited to his abilities, representing 653,482 jobs in the national economy. *Id.* at 37-38. The ALJ accordingly denied Claimant's application. *Id.* at 39. Claimant now appeals that denial to this Court, challenging the limitations included in the ALJ's RFC determination at Step 4. Dkt. No. 8.

## II.    Medical Records

In determining Claimant's functional limitations, the ALJ evaluated Claimant's testimony at the administrative hearing and in function reports, objective medical evidence, and medical opinions from State Agency psychological consultants.

### A.    Testimony

Claimant testified about his mental limitations at the administrative hearing and in function reports. Claimant alleged he experiences hallucinations every two days, exacerbated by anxiety and paranoia, and he requires time to calm down. Admin. Rec. at 34, 62-63, 67-69; Dkt. No. 7. He claimed his hallucinations are less severe and less frequent when he takes medication, however. *Id.* at 34, 62-63. He also testified that he has significant difficulties interacting with others and becomes paranoid that others are talking about him. *Id.* at 34, 59. As a result, he claims he responds disproportionately to conflicts, including with coworkers and supervisors. *Id.* at 34, 58-61. However, in a function report, Claimant indicated he got along "well" with authority figures such as

3

bosses. *Id.* at 244. The ALJ found Claimant's symptoms supported by his impairments but did not find the alleged intensity, persistence, or limiting effects of these symptoms entirely consistent with the record. *Id.*

    **B.**    **Objective Medical Evidence**

The ALJ also evaluated Claimant's history of mental health treatment. Claimant sought behavioral health treatment in September 2021 for "psychosis and cyclic mood" and was prescribed medication. *Id.* at 389-90, 401-03. He reported significant improvement within a month, such that he was able to "go for walks, play basketball, keep a regular sleep schedule, and care for his young child." *Id.* at 386-87. Claimant's mental status examinations indicated he had "intact memory, logical thought processes, and fair judgment" with no evidence of hallucinations or delusions. *Id.* at 386, 395, 402. Claimant's appointments with a psychiatrist similarly indicated that his "down" mood improved with medication. *Id.* at 383-85, 389-394, 1217-19. The psychiatrist also found that Claimant had "appropriate engagement" and "pleasant and cooperative" behavior. *Id.* Between October 2021 and June 2022, Claimant denied hallucinations, delusions, and "tactile disturbances." *Id.* at 1219, 1227-28, 1261. His allegations of mood swings, isolation, paranoia, and hallucinations returned in November 2022, but he had been unmedicated and had not seen his provider in almost a year. 1284-85. Even so, his mental status exam showed no evidence of paranoia or hallucinations. *Id.* at 1286-87.

The ALJ found the objective medical evidence "not completely consistent" with Claimant's alleged symptoms. The ALJ found that objective medical evidence indicated Claimant could maintain attention and concentration to simple, routine tasks and respond appropriately to work stressors and pressures with proper treatment. *Id.* at 36. The ALJ

4

also determined that limiting Claimant to brief and superficial interactions with co-workers and the public accounted for his reports of hallucinations with delusions. *Id.*

### C.  Psychological Consultants

Additionally, two state agency psychological consultants evaluated Claimant's medical disability claim. Regarding Claimant's capacity for social interaction, Dr. Michelle Hoy-Watkins found Claimant able to "get along with coworkers" and "respond appropriately to criticism from supervisors" without significant limitation. *Id.* at 93. She noted that he was moderately limited in his ability to "interact with others" and "interact appropriately with the general public" but found he "can engage in brief and superficial interactions." *Id.* at 89, 92-93. Regarding Claimant's need for time off task or absenteeism limitations, Dr. Hoy-Watkins concluded that Claimant could "understand, remember and follow simple instructions with adequate [concentration, persistence, and pace]" without significant limitation, but she found him moderately limited in his ability to "perform at a consistent pace without an unreasonable number and length of rest periods" or "complete a normal workday and workweek without interruptions from psychologically based symptoms." *Id.* at 92-93. Dr. Jeffrey Boyd reconsidered and affirmed Dr. Hoy-Watkins' determination in all material respects; however, he added under "Social Functioning" that Claimant "[d]enies difficulty interacting with authority figures." *Id.* at 103-04.

The ALJ found the examiners' opinions persuasive, specifically regarding Claimant's ability to "understand, remember, and follow simple instructions with adequate concentration, persistence and pace," and "engage in brief and superficial interactions." *Id.* at 37. He determined their opinions were supported by and consistent with Claimant's medical history and daily activities. *Id.* at 37.

Ultimately the ALJ found that "claimant is capable of making a successful adjustment to other work" and concluded he was not disabled. *Id.* at 38.

## ANALYSIS

Claimant challenges two aspects of the ALJ's RFC determination. Dkt. No. 8. He argues that despite finding the opinions of the State Agency psychological consultants persuasive, the ALJ failed to include limitations they allegedly recommended for (1) interacting with supervisors, and (2) absenteeism and time off task. The Commissioner counters that the ALJ properly incorporated the psychological consultants' recommended limitations into the RFC, and that the record supports the ALJ's RFC determination. Dkt. No. 12. For the reasons set forth below, this Court recommends the Commissioner's decision be affirmed.

### I.  Standard of Review

Disability under the Social Security Act means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under Social Security regulations, disability means the impairments are so severe that the claimant is not only unable to engage in previous work but cannot engage in any other kind of substantial gainful employment that exists in the national economy. *Id.* § 423(d)(2)(A). The claimant bears the burden of proving entitlement to disability benefits. *See* 20 C.F.R. § 404.1512(a)(1); *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013).

Upon review of an ALJ's decision, a court has authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing a decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (sentence four). The Court must uphold the Commissioner's decision if it is supported by substantial evidence in the record as a whole and is not based on legal error. *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018). Substantial evidence is "less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion." *Id.* (quotation omitted). The Court "must consider evidence that supports and detracts from the ALJ's decision." *Cuthrell v. Astrue*, 702 F.3d 1114, 1116 (8th Cir. 2013). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Id.* (quotation omitted).

## II.   RFC Determination

"A claimant's RFC is 'the most he can still do despite his limitations.'" *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019) (quoting 20 C.F.R. § 404.1545(a)(1)). "[T]he RFC determination is a 'medical question' that 'must be supported by some medical evidence of [the claimant's] ability to function in the workplace.'" *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017)). "The ALJ determines a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). An ALJ's analysis should demonstrate a consideration of all impairments, both

7

severe and non-severe, in arriving at the RFC. *See Mark E. v. Kijakazi*, No. 20-cv-2047, 2021 WL 6066260, at *9 (D. Minn. Dec. 7, 2021).

The ALJ is required to construct a "'logical bridge' between the evidence and [her] conclusions." *Jacobs v. Astrue*, No. 08-cv-431, 2009 WL 943859, at *3 (D. Minn. Apr. 6, 2009) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). The "ALJ [i]s not required to adopt the exact limitations set forth in the opinions []he found persuasive." *Wyatt v. Kijakazi*, No. 23-1559, 2023 WL 6629761, at *1 (8th Cir. Oct. 12, 2023). Instead, the inquiry turns on whether the ALJ's decision was supported by substantial evidence. *Vance v. Berryhill*, 860 F.3d 1114, 1118 (8th Cir. 2017). If an ALJ does find an opinion persuasive, he should explain any inconsistencies between that opinion and the RFC determination. *Christine F. v. Kijakazi*, No. 21-cv-2048, 2022 WL 3648674, at *5 n.3 (D. Minn. July 27, 2022), *report and recommendation adopted*, 2022 WL 3647808 (D. Minn. Aug. 24, 2022). "[R]emand is appropriate where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit this Court to conclude that substantial evidence supports the Commissioner's decision." *Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005).

### A. Social Limitations

Claimant argues the ALJ erred by omitting a limitation on interaction with supervisors, as recommended by the State Agency psychologists. Psychologists Hoy-Watkins and Boyd found Claimant able to "get along with coworkers" and "respond appropriately to criticism from supervisors" without significant limitation, but moderately limited in his ability to "interact appropriately with the general public." Admin. Rec. at 93,103-34; Dkt. No. 7. Overall, the psychologists concluded that Claimant had moderate

limitations "interact[ing] with others" but found he "can engage in brief and superficial interactions." *Id.* at 89, 92-93, 103-04. The ALJ found these opinions persuasive and subsequently limited Claimant to "brief and superficial interactions with coworkers and general public." *Id.* at 33. Claimant argues the ALJ erred by finding these opinions persuasive yet failing to include or address limitations related to his ability to interact with supervisors. Moreover, he claims, the psychologists' opinions regarding social interaction contain an internal inconsistency the ALJ failed to reconcile, which warrants remand.

Claimant is incorrect. First and foremost, the psychologists' findings do not necessitate a limitation on interaction with supervisors. They found Claimant moderately limited in his ability to "interact with others," but also determined he was able to "engage in brief and superficial interactions." *Id.* at 89, 92-93. They also specified he could "accept instructions and respond appropriately to criticism from supervisors" without significant limitation and "[d]enie[d] difficulty interacting with authority figures." *Id.* at 93, 99, 103. These findings alone support omitting a limitation on interaction with supervisors.

Regardless, the ALJ had no obligation to include a specific finding about Claimant's ability to interact with supervisors. The ALJ is not required to defer to any medical opinion and thus need not include such a finding simply because the State Agency psychological consultants did, even after finding their opinions persuasive. *Stephanie B. v. Kijakazi*, No. 22-cv-837, 2023 WL 3394802, at *5 (D. Minn. Apr. 4, 2023), *report and recommendation adopted,* 2023 WL 3394594 (D. Minn. May 11, 2023) ("[T]he ALJ is not required to defer to any medical opinion, regardless of who provided it, or how persuasive it is."); 20 C.F.R. § 404.152c(a). Nor do the regulations require the ALJ to specify a claimant's capacity to interact with supervisors. Instead, the ALJ must consider all the

evidence and establish a logical bridge between the evidence and the RFC. *Jacobs v. Astrue*, No. 08-cv-431, 2009 WL 943859, at *3 (D. Minn. Apr. 6, 2009) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). The ALJ has done so here.

After evaluating the record as a whole, the ALJ concluded that limiting Claimant to "brief and superficial interactions with coworkers and general public" accounted for his functional limitations. Admin. Rec. at 33; Dkt. No. 7. To justify this conclusion, the ALJ acknowledged Claimant's report that hallucinations impact his ability to interact but found the allegations "not completely consistent" with the record. *Id.* at 36. Specifically, the ALJ referenced Claimant's denials of hallucinations between October 2021 and June 2022, his improved symptoms when compliant with medication, and his mental status exams showing no evidence of hallucinations or delusions. *Id.* at 35-36. He also supported his finding with citations to the Adult Function Report, in which Claimant reported he got along "well" with authority figures such as bosses, *id.* at 34 (citing 244), and Dr. Boyd's psychiatric evaluation, which reported he [d]enie[d] difficulty interacting with authority figures," *id.* at 37 (citing 97-105). The ALJ thus adequately connected the evidence in the record to his determination. The alleged failure to properly weigh the State Agency psychologists' opinions was not an error.

Nor do the psychologists' opinions necessarily contain an internal inconsistency the ALJ needed to reconcile. Claimant alleges the psychologists' conclusion that he was *moderate[ly] limited* in his ability to interact with others conflicts with their assessment that he could get along with coworkers and respond appropriately to criticism from supervisors *without significant limitation*. Dkt. No. 13 at 4-6. As such, Claimant argues, the ALJ's failure to "explain how any material inconsistencies or ambiguities in the evidence were

10

considered or resolved" warrants remand. *Id.* (quoting *Masden v. Saul*, No. 4:20-CV-00267, 2021 WL 3172934, at *2 (W.D. Mo. July 27, 2021)).

Not so. In addressing alleged conflict, the Court avoids "labeling findings as inconsistent if they can be harmonized." *Galloway v. Kijakazi*, 46 F.4th 686, 690 (8th Cir. 2022) (internal citations omitted). Where inconsistencies can be harmonized, there is no error. *See Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018). The psychologists' findings can be harmonized because "moderate" and "significant" are not coterminous. If Claimant was "moderate[ly]" limited in his ability to interact with others, he was not necessarily "significant[ly]" limited in his ability to get along with coworkers and supervisors. Claimant's moderate interaction limitations are not presumptively significant. Therefore, these statements do not contain a "material inconsistency" the ALJ needed to address or resolve. In total, the ALJ's determination was supported by substantial evidence and the Court recommends that ALJ's decision be affirmed on this ground.

### B.   Time Off Task and Absenteeism

Claimant also argues the ALJ erred by omitting limitations for absenteeism and time off task as recommended by the State Agency psychologists. Dkt. No. 10 at 17-20. Both psychologists noted that Claimant was moderately limited in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Because the ALJ found these opinions "persuasive," Claimant argues, he needed to account for time off task and absenteeism limitations in the RFC.

The ALJ cannot "disregard evidence or ignore potential limitations" but need not "mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605,

11

615 (8th Cir. 2011). "'[S]ome medical evidence' must support the determination of the claimant's RFC," and it is the claimant's burden to prove his or her functional limitations. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003) (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam)); *see also* 42 U.S.C. § 423(d)(5)(A) ("[T]there must be medical signs and findings . . . which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged."). As mentioned earlier, the ALJ is not required to defer to a finding simply because the State Agency psychologists did, even if he finds those opinions persuasive. *See Stephanie B.* 2023 WL 3394802, at *5 ("[T]he ALJ is not required to defer to any medical opinion, regardless of who provided it, or how persuasive it is."). However, the ALJ must consider all the evidence and establish a logical bridge between the evidence and the RFC. The ALJ does so here.

For one, the psychologists' finding that Claimant was moderately limited in his ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms" must be read in context. *See* Admin. Rec. at 92, 102-03; Dkt. No. 7. The psychologists based this recommendation on Claimant's history of psychotic symptoms and paranoid ideation. *Id.* However, they also noted that his symptoms are improved by medication and found him able to "understand, remember and follow simple instructions with adequate [concentration, persistence, and pace]." *Id.* The ALJ found their opinions "persuasive" as a whole, but specifically agreed with the psychologists' findings regarding concentration, persistence, and pace. *Id.* at 37. Separately, the ALJ engaged in a lengthy discussion about the objective medical

evidence (or lack thereof) supporting Claimant's allegations of "psychosis and cyclic mood." *Id.* at 35-37. The ALJ noted that Claimant's mental status exams showed no evidence of paranoia or hallucinations and his symptoms significantly improved or disappeared when compliant with medication. *Id.* This discussion informs the ALJ's evaluation of symptoms caused by Claimant's psychotic symptoms and paranoid ideation, which prompted the psychologists' finding.

The ALJ found persuasive the psychologists' opinions that Claimant could understand, remember, and follow simple instructions with adequate concentration, persistence, and pace, and he found the severity of Claimant's alleged limitations caused by psychosis and hallucinations unsupported by the record. These findings support his decision to omit absenteeism and time off task limitations from the RFC. The Court recommends that ALJ's decision be affirmed on this ground.

## RECOMMENDATION

Based on the record, memoranda, and proceedings herein, and for the reasons stated above, the Court RECOMMENDS THAT:

1. Plaintiff's request to reverse the Commissioner's decision [Dkt. No. 8] be **DENIED.**

2. Defendant's request to affirm the Commissioner's decision [Dkt. No. 12] be **GRANTED**.

Dated: September 4, 2024                    s/David T. Schultz   
                                                                           DAVID T. SCHULTZ
                                                                           U.S. Magistrate Judge

## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).